**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EUGENE F. HICKEY, II,** | : | **No. 3:10cv00907** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **ALLSTATE PROPERTY AND** | : | |
| **CASUALTY INSURANCE** | : | |
| **COMPANY,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is Defendant Allstate Property and Casualty Insurance Company's motion to dismiss Count II of the complaint, or in the alternative, motion for a more definite statement (Doc. 5). Having been fully briefed, the matter is ripe for disposition.

**BACKGROUND**

On August 9, 2007, the Plaintiff, Eugene F. Hickey, II, ("Plaintiff") suffered injuries to his neck and back in a motor vehicle accident caused by another vehicle. (Compl. ¶ 9 (Doc. 1-3)). At the time of the collision, Plaintiff was an insured under an automobile insurance policy issued by the Defendant, Allstate ("Defendant"). (Id. ¶ 10). The policy contained first-party medical benefits coverage in the amount of $100,000.00. (Id.)

Following the collision, Plaintiff sought treatment at Mercy Hospital. (Id. ¶ 12). Thereafter, Dr. Michael Montella prescribed physical therapy which Plaintiff underwent from September 5, 2007 through October 11, 2007 and December 12, 2007 through the present. (Id. ¶ 14). Dr. Montella also referred Plaintiff to Northeastern Rehabilitation Associates where another doctor prescribed cervical facet injections. (Id. ¶ 15). During the course of Plaintiff's treatment, his healthcare providers submitted bills to the Defendant which the Defendant paid. (Id. ¶¶ 17, 19). These healthcare providers also submitted Plaintiff's medical records to the

Defendant at various times over the course of Plaintiff's treatment.  (Id. ¶ 18).

On July 20, 2009, Defendant informed Plaintiff it would require an Independent Medical Examination ("IME") before processing any further medical bills.  (Id. ¶ 20).  On September 17, 2009, Plaintiff attended an IME performed by Dr. Eugene Kim.  (Id. ¶ 24).  Dr. Kim concluded that Plaintiff "sustained a soft tissue musculoligamentous strain in the cervical and lumbar spines which remains symptomatic."  (Id. ¶ 28).  While Dr. Kim reported that Plaintiff's "current treatment and physical therapy is related and necessary," he also stated Plaintiff had "essentially reached his point of maximum medical improvement."  (Id.)  By a letter dated January 5, 2010, Defendant informed Plaintiff that Defendant would pay Plaintiff's medical bills through December 23, 2009.  (Id. ¶ 27).  Citing the results of the IME, Defendant stated that no bills beyond that date would be considered.  (Id.)

Thereafter Plaintiff filed a complaint in the Court of Common Pleas of Lackawanna County asserting two counts.  Count I, Breach of Contract, alleges Defendant breached its contractual obligations under the insurance policy by failing to pay Plaintiff's medical bills after December 23, 2009.  (Id. ¶¶ 32-38).  Count II, Bad Faith, asserts a violation of Pennsylvania's insurance bad faith statute, 42 PA. CONS. STAT. ANN. § 8371.  (Id. ¶¶ 39-43).  Plaintiff requests recovery for first-party medical benefits allegedly owed with interest, punitive damages, and reasonable attorney fees and costs.  (Id. ¶ 43).

Defendant timely removed to this court on the basis of diversity of citizenship and an amount in controversy in excess of $75,000.00.  (Notice of Removal (Doc. 1-1)).  Thereafter, Defendant filed the instant motions: a motion to dismiss Count II of the complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6), and, in the alternative, a motion for a more definite statement regarding paragraph 40(h) of the complaint pursuant to Federal Rule of Civil Procedure 12(e), bringing the case to its present posture.

**JURISDICTION**

The court has diversity jurisdiction over this action pursuant to 28 U.S.C. §§ 1332. Plaintiff is a citizen of Pennsylvania and Defendant is an Illinois corporation with its principal place of business not in Pennsylvania. (Doc. 1-1). The amount in controversy exceeds $75,000.00. (Id.)

As a federal court sitting in diversity, we must apply state law. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)). In this case, the relevant state is Pennsylvania. If the state supreme court has not yet addressed an issue before us, we must predict how that court would rule if presented with that issue. Nationwide v. Mutual Ins. Co., 230 F.3d 634, 637 (3d Cir. 2000). In so doing, we must examine the opinions of the lower state courts, and we cannot disregard them unless we are convinced by other persuasive data that the highest court would rule otherwise. Id.

**LEGAL STANDARD**

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested. Granting the motion is appropriate if, accepting as true all the facts alleged in the complaint, the plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," or put another way, "nudged [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Third Circuit interprets Twombly to require the plaintiff to describe "enough facts to raise a reasonable expectation that discovery will reveal evidence of" each necessary element of the claims alleged in the

3

complaint.  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation."  Id. at 234-35.

In relation to Federal Rule of Civil Procedure 8(a)(2), the complaint need only provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'"  Twombly, 550 U.S. at 555 (citation omitted).  "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  Phillips, 515 F.3d at 232 (citation omitted).  "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief."  Id.

The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted.  In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  However, "we are not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, -- U.S. --,  129 S. Ct. 1937, 1949-50 (2009) (internal quotations omitted).

To decide a motion to dismiss, a court generally should consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192,

4

1196 (3d Cir. 1993).

**DISCUSSION**

Defendant argues that Count II must be dismissed because it is preempted by the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"). 75 PA. CONS. STAT. ANN. §§ 1701-1799.7 (West 2006). In the alternative, Defendant argues paragraph 40(h) of Count II must be repleaded due to vagueness and ambiguity. We address each argument in turn.

**1. Plaintiff's Bad Faith Claim**

Plaintiff contends Defendant violated Pennsylvania's insurance bad faith statute, 42 PA. CONS. STAT. ANN. § 8371. At issue is whether the MVFRL provides the exclusive remedy for Plaintiff's claim, preempting his claim under section 8371 for bad faith.

Section 8371 authorizes recovery for an insurance company's bad faith towards an insured. It provides for several remedies upon a finding of bad faith: (1) an award of "interest on the amount of the claim" at a rate equal to "the prime rate of interest plus 3%"; (2) an award of "punitive damages against the insurer"; and/or (3) an assessment of "court costs and attorney fees against the insurer." 42 PA. CONS. STAT. ANN. § 8371.

The MVFRL requires automobile insurers to provide medical benefit coverage "for reasonable and necessary medical treatment and rehabilitative services." 75 PA. CONS. STAT. ANN. § 1712(1). If an insurer wishes to challenge the reasonableness and necessity of an insured's medical treatment, it must contract with a peer review organization ("PRO") for evaluation of the healthcare services provided to the insured. Id. § 1797(b)(1). The insurer, healthcare provider or insured may challenge the initial determination of the PRO through a request for reconsideration. Id.

§ 1797(b)(2).  If an insurer does not utilize the PRO process, the healthcare provider or the insured may challenge the PRO's initial determination before a court.  Id. § 1797(b)(4).  If either a PRO or a court finds the treatment was medically necessary, the insurer must pay to the healthcare provider the benefits owed with interest at the rate of 12% per year.  Id. §§ 1797(b)(5)-(6).  In the case of a court determination, the insurer must also pay "the costs of the challenge and all attorney fees."  Id. § 1797(b)(6); see also id. § 1716 (providing that if an insurer is found to have acted in an "unreasonable manner" in refusing to pay medical benefits, the insurer shall pay, in addition to benefits owed, "a reasonable attorney fee based upon actual time expended"); id. § 1798(b) ("In the event an insurer is found to have acted with no reasonable foundation in refusing to pay [first-party benefits] when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended.").  Additionally, if a court finds the insurer's conduct wanton, that insurer "shall be subject to a payment of treble damages to the injured party."  Id. § 1797(b)(4).

Because the Supreme Court of Pennsylvania has not addressed whether the MVFRL preempts section 8371 on these facts, this court must predict how the supreme court would decide the issue.  See Nationwide, 230 F.3d at 637.  This court has articulated the general rule that "section 1797 preempts section 8371 where both are applicable."  Stephano v. Tri-Arc Fin. Servs., Inc., 2008 WL 625011, at *5 (M.D. Pa. Mar. 4, 2008).  Where "an insurer's malfeasance goes beyond the scope of section 1797," however, "courts have reconciled the two statutes and found bad faith claims to supplement claims under section 1797."  Id. (citing Schwartz v. State Farm Ins. Co., 1996 WL 189839 (E.D. Pa. Apr. 18, 1996)).  As such,

6

the relevant inquiry is whether Plaintiff's claim falls within the purview of section 1797.

In Perkins v. State Farm Ins. Co.,the court faced this issue under similar circumstances. 589 F. Supp. 2d 559 (M.D. Pa. 2008). In Perkins, the plaintiff was insured under an automobile insurance policy issued by State Farm with first-party medical coverage of $50,000.00. Id. at 561. Following an accident caused by a third-party, the plaintiff obtained medical treatment for her injuries. Id. State Farm refused to continue payment of the plaintiff's medical bills after a peer review report concluded her treatment was not reasonable or necessary. Id. The plaintiff asserted several causes of action including breach of contract and bad faith under section 8371. Id. At issue, in relevant part, was whether the bad faith claim must be dismissed because the MVFRL preempts it. Id. The court denied State Farm's motion to dismiss, holding that while some of the plaintiff's allegations fit within the scope of section 1797 others did not, and those allegations were sufficient to state a claim under section 8371. Id. at 566.

The Perkins court relied on the reasoning of Schwartz, 1996 WL 189839. In Schwartz, the court explained that because defendant insurer used the PRO process to determine the causation of the plaintiff's injury, rather than for the PRO process's stated purpose of determining the reasonableness or necessity of treatment, the plaintiff's claims fell outside the scope of section 1797 and were proper under section 8371. Id. at *4. Following this reasoning, the Perkins court evaluated whether the plaintiff's bad faith claim fell within the purview of section 1797. Perkins, 589 F. Supp. 2d at 566. The court held that those allegations which amounted to a challenge to the denial of first-party benefits, such as State Farm's

7

"failure to conduct a reasonable investigation, fairly evaluate coverage, or timely notify [the plaintiff] of a denial of benefits," fell under section 1797. Id. However, the plaintiff also premised her claim on allegations of State Farm's abuse of the PRO process by knowingly engaging a PRO that provided biased peer review reports. Id. The court held that this claim was not within the scope of section 1797 and sufficed to state a claim under section 8371. Id.

These cases suggest that the scope of section 1797 is confined to those claims challenging an insurer's determination of the reasonableness and necessity of an insured's treatment. See Stephano, 2008 WL 625011, at *6 n.9 ("From the explicit, narrow language of the statute, it is evident that the legislature intended that section 1797 only govern the issue of whether the medical treatment was necessary or reasonable."). In other words, section 8371 is preempted by section 1797 where an insured alleges only that an insurer wrongly denied payment of first-party medical benefits based on a determination of the propriety of treatment and the associated charges. Claims based on allegations outside this narrow scope, such as a claim involving contract interpretation, a claim of abuse of the PRO process, or a claim disputing the cause of injury, go beyond the scope of section 1797 and may be pursued under section 8371. See Perkins, 589 F. Supp. 2d at 565.

In the instant case, Plaintiff alleges Defendant violated section 8371 by engaging in bad faith conduct such as: a) failing to pay first-party medical benefits due the Plaintiff; b) failing to objectively and fairly evaluate the Plaintiff's first-party medical benefit claim; c) failing to promptly and fairly effectuate a resolution of the Plaintiff's first-party medical benefit claim; d) ordering the IME to challenge the reasonableness and necessity

8

of the Plaintiff's medical treatment; e) challenging the Plaintiff's treating physician's treatment plan without good cause; f) applying improper standards to substantiate its termination of Plaintiff's first-party medical benefits; g) ignoring the opinions of Dr. Kim that Plaintiff's current treatment program is "reasonable and necessary"; and h) causing Plaintiff to initiate litigation to obtain first-party medical benefits. (Doc. 1-3 ¶ 40). We find that such allegations amount to a challenge to the denial of first-party benefits based on the reasonableness and necessity of medical treatment and would fall under section 1797, barring a claim under section 8371. See Perkins, 589 F. Supp. 2d at 566 (finding that allegations made to support a bad faith claim, such as insurer's alleged failure to conduct a reasonable investigation, fairly evaluate coverage, or timely notify the plaintiff of a denial of benefits, "are nothing more than a challenge to the denial of first-party benefits and would fall under section 1797").

Plaintiff maintains that section 1797 is limited to those situations in which the insurer avails itself of the PRO process. Plaintiff argues that since Defendant made the decision to terminate benefit payments independent of any PRO process or determination, section 1797 does not preempt his claim under section 1871. In support of this argument, Plaintiff cites several instances in which the Stephano court suggested that the PRO process must be "initiated, followed, or implicated" in order to trigger section 1797. Stephano, 2008 WL 625011, at *7. We disagree with Plaintiff that an insurer must utilize a PRO in order to trigger the procedures and remedies of section 1797. A brief review of the history and purpose of section 1797 supports this conclusion.

The MVFRL mandates that automobile insurers provide medical benefit-coverage "for reasonable and necessary medical treatment and rehabilitative services." 75 PA. CONS. STAT. ANN. § 1712. Prior to the

9

enactment of section 1797 in 1990, the MVFRL did not include a procedure which an insurer could use to challenge whether an insured's treatment was reasonable or necessary.  See Schwartz, 2008 WL 189839, at *3 ("An insurer's obligation to pay claims for medical benefits was triggered only when the insured submitted 'reasonable proof' of the amount of benefits due.") (citing 75 PA. CONS. STAT. ANN. § 1716).  Thus, the purpose of section 1797 is to provide statutory remedies and procedures in case of a dispute over the reasonableness or necessity of treatment.  The element necessary to trigger section 1797 is a dispute over the reasonableness or necessity of treatment, rather than an insurer's utilization of a PRO.  See Stephano, 2008 WL 625011, at *8 ("[T]he very purpose of § 1797 [is] to confirm that "treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary.") (citing 75 PA. CONS. STAT. ANN. § 1797(b)(1)).  Section 1797 can be triggered even when an insurer does not utilize a PRO.  In fact, section 1797(b)(4) provides a specific procedure an insured can use to challenge an insurer's denial of benefit payments where the insurer does not utilize a PRO.  75 PA. CONS. STAT. ANN. § 1797(b)(4); See Williams v. State Farm Mut. Auto. Ins. Co., 763 F. Supp. 121 (E.D. Pa. 1991) ("If an insurer denies a claim without requesting a PRO, the provider (or the insured) is authorized to bring a civil action to have the court determine the reasonableness and necessity of treatment.") (citing 75 PA. CONS. STAT. ANN. § 1797(b)(4)).

Here, Defendant denied payment of Plaintiff's medical bills on the basis of an IME report stating Plaintiff had "essentially reached his point of maximum medical improvement."  (Doc. 1-3 ¶ 28).  Plaintiff disputes Defendant's conclusion, maintaining that his treatment was reasonable and necessary.  (Id. ¶ 17).  This represents a clear dispute over whether

Plaintiff's treatment is reasonable or necessary. Therefore, Plaintiff's claim triggers the remedies and procedures of section 1797.

Plaintiff asserts an additional basis for the bad faith claim. Plaintiff claims that Defendant "had and has a practice of attempting to terminate medical treatment by 'independent medical examination' without reasonable cause to do so." (Doc. 1-3 ¶ 29). Drawing all reasonable inferences and viewing them in the light most favorable to the plaintiff, the Court finds that Plaintiff has alleged an abuse of the PRO process, which states a claim under section 8371 sufficient to permit discovery. See Perkins, 589 F. Supp. 2d at 566.

Accordingly, Defendant's motion to dismiss will be granted in part and denied in part. The motion will be granted with respect to those allegations preempted by section 1797 of the MVFRL, enumerated at paragraphs 40(a)-(h)(1)[1] of the complaint (Doc. 1-3). The motion will be denied, specifically, with respect to Plaintiff's allegation of abuse of the PRO process (Doc. 1-3 ¶ 29).

## 2. Sufficiency of Paragraph 40(h) of the Complaint

Because we find Plaintiff's bad faith claim may proceed based on his allegation of abuse of the PRO process, it is necessary to consider Defendant's argument that one subsection of that claim - paragraph 40(h)(2) - must be stricken or repleaded due to vagueness and ambiguity. A defendant may move for a more definite statement under Federal Rule of Civil Procedure 12(e). "Although the motion for a more definite statement continues to exist in Rule 12(e), it is directed to the rare case where

---

[1]The complaint lists two paragraphs labeled 40(h). The allegation contained in the first paragraph 40(h) (hereinafter "40(h)(1)") is preempted by the MVFRL. The allegation contained in the second paragraph 40(h) (hereinafter "40(h)(2)") is discussed below.

because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading." Schaedler v. Reading Eagle Publication, Inc., 370 F. 2d 795, 797 (3d Cir. 1967).

We find that paragraph 40(h)(2), which asserts Defendant engaged in a pattern of conduct including, but not limited to: "Such other conduct which violates 42 Pa. C.S.A. § 8371," (Doc. 1-3 ¶ 40), is not so vague that Defendant will be unable to frame a responsive pleading.  Looking to the language of the statute, such conduct would amount to an insurer's bad faith actions toward an insured.  The Perkins court noted that while the statute does not define "bad faith," Pennsylvania courts have adopted the following definition of "bad faith" on the part of an insurer:

> any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Perkins, 589 F. Supp. 2d at 562 (citing Terletsky v. Prudential Property & Casualty Ins. Co., 649 A. 2d 680, 688 (Pa. Super. Ct. 1994) (quoting Black's Law Dictionary 139 (6th ed. 1990)) (citations omitted); see also Nw. Mut. Life Ins. Co. v. Babayan, 430 F. 3d 121, 137 (3d Cir. 2005) (predicting the Pennsylvania Supreme Court would define "bad faith" according to the definition set forth in Terletsky)).  Using this definition and the other facts alleged in the complaint, Defendant should be able to form a response to paragraph 40(h)(2).  Thus, we will deny Defendant's motion for a more definite pleading.

**CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss Count II of the complaint will be granted with respect to those allegations

preempted by section 1797 of the MVFRL, enumerated at paragraphs 40(a)-(h)(1) of the complaint (Doc. 1-3).  The motion will be denied, specifically, with respect to Plaintiff's allegation of abuse of the PRO process (Doc. 1-3 ¶ 29).  Defendant's motion for a more definite statement will be denied.  An appropriate order follows.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EUGENE F. HICKEY, II,<br>    Plaintiff | : | No. 3:10cv00907 |
| | : | |
| v. | : | (Judge Munley) |
| | : | |
| ALLSTATE PROPERTY AND<br>CASUALTY INSURANCE<br>COMPANY,<br>    Defendant | : | |

## ORDER

**AND NOW**, to wit, this **25th** day of June, 2010, upon consideration of Defendant's motion to dismiss (Doc. 5), it is HEREBY **ORDERED** that:

1. The motion to dismiss is **GRANTED** with respect to those allegations preempted by section 1797 of the MVFRL, enumerated at paragraphs 40(a)-(h)(1) of the complaint (Doc. 1-3). The motion is **DENIED** with respect to the Plaintiff's allegation of abuse of the PRO process (Doc. 1-3 ¶ 29).

2. Defendant's motion for a more definite statement (Doc. 5) is **DENIED**.


　　　　　　　　　　**BY THE COURT:**


　　　　　　　　　　 **s/ James M. Munley**

　　　　　　　　　　**JUDGE JAMES M. MUNLEY**
　　　　　　　　　　**United States District Court**